IN THE CIRCUIT COURT OF TIPPAH COUNTY, MISSISSIPPI

| | |
|---|---|
| GARY CARR, individually as next friend and on behalf of all wrongful death beneficiaries of LUTHER GREER, deceased. | CIVIL ACTION NO.: CV2019-075 |
| PLAINTIFF, | |
| v. | |
| CHARLES ELLIOTT, M.D, individually, PRIMARY CARE CLINIC OF RIPLEY, P.A., MARSHALL HOLLIS, individually, HOLLIS DISCOUNT PHARMACY, INC., PURDUE PHARMA, L.P., PURDUE PHARMA, INC., THE PURDUE FREDERICK COMPANY, INC., PAR PHARMACEUTICAL COMPANIES, INC.; PAR PHARMACEUTICAL, INC.;ENDO INTERNATIONAL, PLC; ENDOHEALTH SOLUTIONS, INC.; ENDO PHARMACEUTICALS, INC.; HI-TECH PHARMACAL CO., INC.; AKORN, INC.; MALLINCKRODT PLC and MALLINCKRODT LLC, ACTAVIS PHARMA, INC.; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; and JOHN DOES 1-10 | |
| DEFENDANTS. | |

## FIRST AMENDED COMPLAINT

COMES NOW, GARY CARR, individually as next friend and on behalf of all wrongful death beneficiaries of LUTHER GREER, deceased (hereinafter "CARR" or "'Plaintiff"), by and through the undersigned counsel of record, and states unto this Honorable Court as a cause of action against Defendants and alleges the following:

## INTRODUCTION

1.  Like thousands of other individuals, Luther Greer suffered from chronic pain for the majority of his adult life. In his attempts to obtain pain control and promote his overall health

FILED THIS 12th DAY OF
_____ 2019
RANDY GRAVES, CIRCUIT CLERK
BY _____ DC

1

and enjoyment of life, Luther Greer sought and received medical care, was prescribed an excessive and unreasonable amount of opioid medication, became addicted and ultimately died.

2.      Prescription opioids are powerful pain-reducing medications that include prescription oxycodone and hydrocodone, among others.  Hydrocodone is a Schedule II and III narcotic, and a controlled substance.   OxyContin is a Schedule II narcotic and a controlled substance. Oxycodone is a Schedule II narcotic and a controlled substance. A substance listed in the Schedule II has a high potential for abuse and has a currently accepted but severely restricted medical use in treatment in the United States and abuse or overuse of the substance may lead to severe psychological and physical dependence.

3.      Although these medications can help manage pain when prescribed properly and in a monitored and reasonable amount for the condition, over prescribing of opioids can cause serious harm including addiction, compromised cardiac function, compromised respiratory function, overdose and death.

## PARTIES

4.      Plaintiff Gary Carr is an adult resident citizen of Amory, Mississippi.  He is the surviving son and next of kin of Luther Greer, deceased.  He is suing as legal representative of all wrongful death beneficiaries of Luther Greer, deceased.

5.      At all times relevant herein, Defendant Primary Care Clinic of Ripley, Inc. was a for profit company, organized and existing under the laws of the State of Mississippi, with its principal place of business in Ripley, Mississippi. Defendant, at all times relevant herein, was conducting and doing business in Ripley, Mississippi, where patients were received and treated.

6.      Primary Care Clinic of Ripley. While caring for and treating Luther Greer, the acts performed by physicians, nurses, and other agents and employees of Defendant were in connection

2

with their duties at Primary Care Clinic of Ripley and they were acting within the scope of their employment and/or agency. Accordingly, Defendant is responsible and vicariously liable for the negligent acts and omissions of its physicians, nurses, agents and/or employees, as hereinafter described, under the doctrines of *respondeat superior*, apparent agency, actual agency, and express agency.

7.     At all times relevant herein, Defendant Charles Elliott, M.D. was as resident of Mississippi and was duly licensed to practice medicine in the state of Mississippi. Dr. Elliott practices medicine at Primary Care Clinic of Ripley in Ripley, Mississippi. Dr. Elliott was, upon information and belief, at all relevant times an employee and/or agent of Primary Care Clinic of Ripley and did practice medicine.

8.     At all relevant times herein, Defendant Hollis Discount Pharmacy, Inc. was a for profit company, organized and existing under the laws of the State of Mississippi, with its principal place of business in Ripley, Mississippi. Defendant, at all times relevant herein, was conducting and doing business in Ripley, Mississippi, where as a pharmacy, it sold prescription medication to its customers. While selling prescription medication to Luther Greer, the acts performed by pharmacists, and other agents and employees of Defendant were in connection with their duties at Hollis Discount Pharmacy and they were acting within the scope of their employment and/or agency. Accordingly, Defendant is responsible and vicariously liable for the negligent acts and omissions of its physicians, nurses, agents and/or employees, as hereinafter described, under the doctrines of *respondeat superior*, apparent agency, actual agency, and express agency.

9.     At all relevant times herein, Defendant Marshall Hollis, was a resident of Mississippi and was duly licensed as a pharmacist in the State of Mississippi. Marshall Hollis currently resides in Ripley, Mississippi. Marshall Hollis was, upon information and belief, at all

3

relevant times an employee and/or agent of Hollis Discount Pharmacy and rendered pharmacological services.

10.     At all relevant times herein, Defendant Purdue Pharma L.P. is a limited partnership organized under the laws of the state of Delaware with its principal place of business in Connecticut. Defendant Purdue Pharma, Inc., is a New York corporation with its principal place of business in Connecticut. Defendant The Purdue Frederick Company, Inc. is a New York corporation with its principal place of business in Connecticut. Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company Inc., and their U.S. Drug Enforcement Administration ("DEA") registrant subsidiaries and affiliates are collectively referred to as "Purdue". At all relevant times, Purdue is or was in the business of manufacturing the opioid OxyContin and promotes, markets, advertises and sells OxyContin in Ripley, Tippah County, Mississippi.

11.     At all relevant times herein, Defendant Endo Health Solutions Inc. is a Delaware corporation with its principal place of business in Malvern, Pennsylvania. Defendant Endo Pharmaceuticals Inc. is a wholly-owned subsidiary of Endo Health Solutions Inc. and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania. Defendant Endo International, PLC has two principal places of business: one in Dublin, Ireland and the other in Malvern, Pennsylvania.

12.     Defendant Par Pharmaceutical, Inc. is a Delaware corporation with its principal place of business in Chestnut Ridge, New York and is a wholly owned subsidiary of Par Pharmaceutical Companies, Inc. f/k/a Par Pharmaceutical Holdings, Inc. Defendant Par Pharmaceutical Companies, Inc. is a Delaware corporate with its principal place of business in Chestnut Ridge, New York. Par Pharmaceutical, Inc. and Par Pharmaceutical Companies, Inc.

were acquired by Endo International, PLC in September 2015 and serve as operating companies of Endo International, PLC. Endo International, PLC, Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Par Pharmaceutical Companies, Inc., Par Pharmaceutical, Inc., and their DEA registrant subsidiaries and affiliates are hereinafter collectively referred to as "Endo". At all relevant times, Endo is or was in the business of manufacturing and selling Endocet 10/325mg. and hydrocodone/apap 10/325mg., the opioid medications which were taken by Luther Greer. Endo promotes, markets, advertises and sells Endocet 10/325mg and hydrocodone/apap 10/325mg in Ripley, Tippah County, Mississippi.

13.     At all relevant times herein, Defendant Mallinckrodt LLC is a Delaware limited liability company headquartered in Missouri. Mallinckrodt LLC is a subsidiary of Mallinckrodt PLC, which is an Irish public limited company with its headquarters in Staines-Upon-Thames, Surrey in the United Kingdom. These Defendants and their DEA registrant subsidiaries and affiliates are collectively referred to as "Mallinckrodt." At all relevant times, Mallinckrodt is or was in the business of manufacturing the opioid hydrocodone/apap 10/500mg, and promotes, markets, advertises and sells hydrocodone/apap 10/500mg in Ripley, Tippah County, Mississippi.

14.     Defendant Actavis Pharma, Inc. is a Delaware corporation with its principal place of business in New Jersey. During the time period relevant to this matter and until sold to Teva Pharmaceutical Industries Ltd in August 2016, Actavis Pharma, Inc. and their DEA registrant subsidiaries and affiliates are collectively referred to as "Actavis". At all relevant times, Actavis is or was in the business of selling and marketing the opioid medications taken by Luther Greer, Hydromet Syrup and hydrocodone/apap 10/500mg, in Ripley, Tippah County, Mississippi.

15.     Defendant Teva Pharmaceutical Industries Ltd. is an Israeli corporation with its principal place of business in Petah Tikva, Israel. Defendant Teva Pharmaceuticals USA, Inc. is a

Delaware corporation with its principal place of business in North Wales, Pennsylvania and is a wholly owned subsidiary of Teva Pharmaceutical Industries Ltd. Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc., and their DEA registrant subsidiaries and affiliates are collectively referred to as "Teva". At all relevant times, Teva is or was in the business of manufacturing, selling, promoting, and/or distributing both brand name and generic opioids in Ripley, Tippah County, Mississippi, including the opioid medications taken by Luther Greer, Hydromet Syrup and hydrocodone/apap 10/500mg.

16.     Defendant Akorn, Inc. is a Louisiana corporation with its principal please of business in Baton Rouge, Louisiana. During the relevant time period, Akorn, Inc. acquired Hi-Tech Pharmcal Co, Inc.. These Defendants and their DEA registrant subsidiaries and affiliates are collectively referred to as "Akorn". At all relevant times, Akorn is or was in the business of selling and marketing the opioid medications taken by Luther Greer, hydrocodone-homatropine syrup and Lortab, in Ripley, Tippah County, Mississippi.

17.     Defendant Does 1 through 10 are individuals, corporations, limited liability companies, partnerships or other entities whose acts or omissions amounted to negligence, gross negligence, medical malpractice/medical negligence, pharmaceutical malpractice/pharmaceutical negligence, and/or products liability and consequently contributed to or directly resulted in the death of Luther Greer. The identities of these Defendants are unknown to the Plaintiff until adequate discovery is allowed.

## JURISDICTION AND VENUE

18.     The acts and omissions giving rise to this lawsuit all occurred in Ripley, Tippah County, Mississippi. This Court has proper jurisdiction and venue over this action and the parties hereto. This lawsuit is timely filed pursuant to applicable Mississippi law.

19.     Venue is proper in Tippah County, Mississippi because the causes of action arose in Tippah County, all relevant events occurred in Tippah County, Mississippi, and the Defendants conducted business in Tippah County, Mississippi.

## NATURE OF THE ACTION

20.     Plaintiff brings this action against the Defendants asserting claims for negligence and gross negligence against all parties, and medical malpractice/medical negligence against Defendants Charles Elliott, M.D., Primary Care Clinic of Ripley, Inc., Marshall Hollis and Hollis Discount Pharmacy, Inc. and product liability against all of the defendants that either manufactured, designed and/or distributed the opioid and pain medication.

## FACTUAL ALLEGATIONS

21.     Luther Greer first sought medical care from Charles Elliott, M.D. and Primary Care of Ripley, P.A. in the early 2000s. Mr. Greer sought medical care for follow up of his hypertension, chronic low back pain, anxiety and monitoring of diabetes.

22.     On or about January 2005, and in response to Mr. Greer's complaints of chronic low back pain, Defendant Charles Elliott, M.D, ordered that Mr. Greer take the following medication:    60 mg of OxyContin twice daily and Lortab 10/500 mg (generic: hydrocodone/acetaminophen) four times a day for pain.

23.     Dr. Elliott continued to prescribe and order Mr. Greer 60 mg of OxyContin twice daily and Lortab 10/500 mg four times a day for pain for in excess of ten (10) years.

24.     OxyContin is a powerful narcotic manufactured and distributed by Purdue.

25.     Lortab is a powerful narcotic manufactured and distributed by Akorn, Inc.(brand), Mallinckrodt (generic), and Endo (generic).

26.     Norco is a powerful narcotic manufactured by Actavis (generic) and Endo

7

(generic).

27.     The pharmaceutical defendants misrepresented to Luther Greer's medical providers that these medications were appropriate for chronic pain and long-term use.  These statements were false, and the pharmaceutical defendants intentionally hid the risks of prescribing these medications for long term use.  The pharmaceutical defendants also minimized the significant symptoms of opioid withdrawal—which include drug cravings, anxiety, insomnia, abdominal pain, vomiting, diarrhea, sweating, tremor, tachycardia (rapid heartbeat), and the unmasking of anxiety, depression, and addiction—and grossly understated the difficulty of tapering, particularly after long-term opioid use.

28.     From January 2, 2010 through the date of Mr. Greer's death on April 15, 2017, Dr. Elliott prescribed a total of approximately 5,340 OxyContin and 10,680 other opioid-based pills to Mr. Greer.

29.     Based upon information and belief, Dr. Elliott had Mr. Greer enter into a "pain agreement" whereby he was required to obtain his prescriptions from Hollis Discount Pharmacy, Inc. in Ripley, Mississippi.

30.     During the entire time while Mr. Greer was under the care of Dr. Elliott and being prescribed the opioid medications, Mr. Greer obtained his prescriptions from Hollis Discount Pharmacy, Inc.

31.     During all relevant times, Marshall Hollis was a licensed pharmacist and the owner of Hollis Discount Pharmacy, Inc.  Based upon information and belief, Marshall Hollis was the pharmacist that filled all of Mr. Greer's prescriptions.

32.     From January 2, 2010 through the date of Mr. Greer's death on April 15, 2017, Hollis Discount Pharmacy and Marshall Hollis filled Mr. Greer's prescriptions and dispensed

5,340 OxyContin pills and 10,680 other opioid-based pills concurrently with benzodiazepines. Hollis Pharmacy and Marshall Hollis did not question the amount or duration of these prescriptions and did not warn Mr. Greer of the potential ramifications of taking this number of opioids long term.

33.     Based upon information and belief, all of Dr. Elliott's patients to whom an opioid pain medication was prescribed were required to fill their prescriptions at Hollis Pharmacy. Therefore, Hollis Discount Pharmacy and Marshall Hollis had actual knowledge of the pattern of over-prescribing opioids to patients of Primary Care Clinic of Ripley, P.A.

34.     Mr. Greer continued under the care of Charles Elliott, M.D. and Primary Care Clinic of Ripley, Inc. for at least fifteen (15) years and Charles Elliott, M.D. and Primary Care of Ripley, Inc. was responsible for monitoring the effects on Mr. Greer as a result of the opioid medications.

35.     On or about October 18, 2016, after over ten (10) years of prescribing 60 mg of OxyContin twice daily to Mr. Greer for his chronic pain, Defendant Charles Elliot, M.D. altered Mr. Greer's prescription for opioids.  At this time Dr. Elliott decreased Mr. Greer's OxyContin to 40 mg twice daily and prescribed Norco 10/325 mg (generic: hydrocodone/acetaminophen) every 6 hours.

36.     As a result of the significant decrease in his opioid medication after such an extended period of time, Mr. Greer suffered serious psychological and physical withdrawals which included anxiety, diarrhea, cramps, vomiting, nausea, headaches, and increased stress on his heart.

37.     On November 29, 2016, Mr. Greer sought treatment at Primary Care Clinic of Ripley, P.A. and was treated by Lori Duke, CFNP.  Mr. Greer was complaining of nausea, diarrhea chills, and epigastric pain. Ms. Duke ordered testing for Mr. Greer and he was admitted to Tippah

County Hospital for lab work and reported nausea, vomiting, diarrhea, chills, and cramps.

38.     On January 17, 2017, Mr. Greer returned to Dr. Elliot for a follow-up. On this date, Dr. Elliott once again reduced Mr. Greer's OxyContin from 40 mg to 30 mg twice daily and prescribed Norco 10/325 every 6 hours for pain.

39.     On April 12, 2017, Mr. Greer was admitted to Magnolia Regional Health Center in Corinth, Mississippi with chest pain, nausea, and vomiting. On April 13, 2017, Mr. Greer was transferred to Baptist Memorial Hospital where he died of heart failure.

40.     The Defendants actions in prescribing, marketing, and dispensing unconscionable amounts of opioids to Luther Greer to treat his chronic pain resulted in Luther Greer becoming an addict with long-term dependence on opioids. Luther Greer's dependence on opioids caused physical suffering, caused his chronic conditions to worsen, resulted in psychological stress and anxiety as a result of his inability to cease taking these opioids and, ultimately, caused his death.

**CAUSES OF ACTION**

**MEDICAL MALPRACTICE – CHARLES ELLIOTT, M.D.
AND RIPLEY PRIMARY CARE CLINIC, INC.**

41.     The Plaintiff hereby repeats and realleges each and every allegation set forth above.

42.     Plaintiff has complied with the provisions of Miss. Code Ann. § 15-1-36 by mailing written notice of claim to Charles Elliott, M.D. and Primary Care Clinic of Ripley, Inc. giving notice of Plaintiff's intention to file this lawsuit for medical negligence. The notice requirements of Miss. Code Ann. § 15-1-36 have been satisfied.

43.     Plaintiff has complied with the provisions of Miss. Code Ann. § 11-1-58 by consulting with an expert prior to filing the instant complaint. The consultation requirements of Miss. Code Ann. § 11-1-58 have been satisfied, and a certificate of compliance is attached hereto.

44.     Defendants Charles Elliott, M.D. and Ripley Primary Care Clinic, Inc. knew or

10

should have known that the amount and combination of drugs that were ordered and administered to Mr. Greer, including OxyContin, Lortab 10/500 mg, and other opioid-based medications for an extended and excessive period of time would likely result in serious adverse events, including addiction, physical dependency, deteriorated quality of life, and depressed cardiac function. Further, they knew or should have known prescribing these medications concurrently with benzodiazepines for an extended period of time significantly increased the risk of depressed respiration, increased sedation, impaired cognitive function, coma, and death.

45.     During this same timeframe in which Dr. Elliott was prescribing Mr. Greer opioids, Dr. Elliott was concurrently prescribing Mr. Greer benzodiazepines, which are both central nervous system depressants, in spite of the significantly increased risk of depressed respiration, increased sedation, impaired cognitive function, coma, and death.

46.     As a direct and proximate result of the extended length of time that the opioid medications were prescribed, the excessive amount of the opioid medications that were prescribed, and the combination of opioid medications that were prescribed, Mr. Greer suffered injuries and death.

47.     The evaluation and treatment of Mr. Greer by Defendants was below the acceptable standards of care, skill, and diligence. Accordingly, the treatment, evaluation and prescribing of excessive opioid medications amounted to medical negligence. The medical negligence of Defendants included, but was not limited to:

   a) Failing to exercise reasonable care and diligence in the application of knowledge, skill, care and ability in the treatment and evaluation of Luther Greer;

   b) Failing to exercise their best judgment in their care and treatment of Luther Greer;

   c) Failing to comply with the applicable standard of care;

11

    d) Ordering an amount and combination of drugs, including OxyContin, Lortab, and other opioid-based medications that was likely to result in serious adverse events, and;

    e) Such other negligent acts and omissions as may be shown at trial.

48.     As a direct and proximate result of the negligence of Defendants, Luther Greer suffered injuries and death. The injuries and damages sustained by Mr. Greer include, but are not limited to:

    a) Physical pain and suffering;

    b) Mental and emotional pain and suffering;

    c) Permanent injury;

    d) Medical expenses;

    e) Loss of enjoyment of life;

    f) Death;

    g) Funeral and burial expenses; and

    h) All damages available to him under the law.

## PHARMACEUTICAL MALPRACTICE - HOLLIS PHARMACY AND MARSHALL HOLLIS, INDIVIDUALLY

49.     The Plaintiff hereby repeats and realleges each and every allegation set forth above.

50.     Plaintiff has complied with the provisions of Miss. Code Ann. § 15-1-36 by mailing written notice of claim to Hollis Discount Pharmacy and Marshall Hollis giving notice of Plaintiff's intention to file this lawsuit for medical/pharmaceutical negligence. The notice requirements of Miss. Code Ann. § 15-1-36 have been satisfied.

12

51.     Plaintiff has complied with the provisions of Miss. Code Ann. § 11-1-58 by consulting with an expert prior to filing the instant complaint. The consultation requirements of Miss. Code Ann. § 11-1-58 have been satisfied, and a certificate of compliance is attached hereto.

52.     Defendant, Hollis Discount Pharmacy, dispensed unreasonable quantities of opioids from its pharmacy in Ripley, Mississippi despite being on notice of the prescribing physician's pattern of over-prescribing opioids.

53.     Hollis Pharmacy was aware of the excessive number of prescriptions being written by Elliott and his practice as Elliott required his patients to execute a "Pain Contract" whereby they could only get their opioid pain medications filled at Hollis Pharmacy.

54.     Defendants Hollis Discount Pharmacy and Marshall Hollis owed the decedent, Luther Greer, a duty to exercise reasonable care in filling prescriptions and to not repeatedly refill prescriptions of dangerous and highly addicting opioids, nor to fill the opioid prescriptions concurrently with benzodiazepines.

55.     The prescriptions filled by the Defendants for Luther Greer at the direction of Charles Elliott, M.D. are unreasonable on their face because they were written in a quantity, frequency, dosage or combination that a reasonable pharmacist would either have checked with the prescribing doctor, warned the patient or refused to fill the prescriptions.

56.     Defendants Hollis Discount Pharmacy and Marshall Hollis had actual knowledge of the dangers of over prescribing opioid pain medications and the risks to Luther Greer of him taking these dangerous and addictive opioid medications in an excessive amount and for an unreasonable amount of time.

57.     Further, Defendants Hollis Discount Pharmacy and Marshall Hollis were filling Mr. Greer's opioid prescriptions concurrently with his benzodiazepine prescriptions. Hollis Discount

13

Pharmacy and Marshall Hollis knew or should have known the opioids being prescribed concurrently with the benzodiazepines for an extended period of time significantly increased the risk of depressed respiration, increased sedation, impaired cognitive function, coma, and death.

58.     Defendants breached their duty of care to Luther Greer by failing to warn him of the inherent risks in filling repeated and unreasonable prescriptions of opioids and failed to warn of the potentially fatal consequences of same.

59.     The pharmaceutical negligence of Defendants included, but was not limited to:

   a)  Failing to use due and proper care in filling and dispensing prescriptions;

   b)  Failing to exercise the level of skill and care recognized by reasonably prudent and similar pharmacy professionals;

   c)  Dispensing or filling prescriptions that were unreasonable on their face or in light of the circumstances;

   d)  Failing to warn under the circumstances;

   e)  Failing to comply with their own relevant policies and procedures;

   f)  Failing to comply with relevant statutory and regulatory provisions; and

   g)  Subjecting Luther Greer to an unreasonable risk of harm for their foreseeable conduct in filling and dispensing dangerous and excessive amounts of opioids.

## NEGLIGENCE – ALL DEFENDANTS

60.     The Plaintiff hereby repeats and realleges each and every allegation set forth above.

61.     At all relevant times, the Defendants had a duty to exercise reasonable care in prescribing, distributing and marketing opioid medications in Ripley, Tippah County, Mississippi.

62.     The pharmaceutical Defendants misrepresented, understated or hid the highly addictive propensities of opioid medications generally and used unsafe marketing practices.

14

Further, the pharmaceutical defendants failed to warn or advise the prescribing physicians of the addictive qualities of these medications.

63.     By engaging in negligent conduct that created an unreasonable risk of harm to Luther Greer, Defendants failed to exercise reasonable care to prevent known and potential harms that were actually inflicted upon Luther Greer.

64.     The Defendants actions in prescribing and dispensing unconscionable amounts of opioids to Luther Greer to treat his chronic pain resulted in Luther Greer becoming an addict with long-term dependence on opioids.  Luther Greer's dependence on opioids caused physical suffering, caused his chronic conditions to worsen, and resulted in psychological stress and anxiety as a result of his inability to cease taking these opioids without serious health consequences.

65.     Reasonably prudent manufacturers of opioids, prescribing physicians, and dispensing pharmacies and pharmacists would anticipate the damages that would befall Luther Greer as a direct result of the opioid medications obtained by Luther Greer and would have taken action to prevent such harm and damages.

66.     The Defendants, individually and jointly, failed to exercise reasonable care by providing Luther Greer with opioid medications in an excessive quantity for an excessive period of time and failing to disclose the true nature and significant risks associated with the opioid medications that he was taking.

67.     Defendants breach of duty, individually and jointly, caused the injury and death of Luther Greer and each Defendant is jointly and severally liable for the damages to Mr. Greer as a result of the negligence of the Defendants.

## PRODUCTS LIABILITY

68.     Plaintiff reasserts the allegations in the foregoing paragraphs as if fully set out herein.

69.     At all times material to this action, Defendants, except individual defendants, who were engaged in the business of the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling, and/or sale of opioid products.

70.     At all times material to this action, Defendants' opioid products were expected to reach, and did reach, consumers in Ripley, Mississippi, including Plaintiffs herein, without substantial change in the condition in which they were sold.

71.     Defendants knew that the damage causing characteristics of Defendants' product include its addictive properties on patients and the associated health risks with over utilizing these drugs.

72.     Defendants knew that prolonged use of opioids leads to decreased effectiveness, requiring increases in doses to achieve the same level of pain relief, markedly increasing the risk of significant side effects and addiction. Defendants conducted studies documenting these risks, yet failed to publish the results or warn of the documented risks.

73.     The risks of opioid addiction are grave, and Defendants had a duty to warn about these risks.

74.     Providing such warnings would have been easily feasible but would have interfered with Defendants' marketing efforts. Instead, Defendants promoted falsehoods and minimized the risk of addiction and withdrawal from long term opioid use. The failure to warn or adequately warn of known risks, dangers, and side effects were not only negligent but also were a violation of the product/strict liability laws of the state of Mississippi.

16

75.     Defendants knew that opioids are too addictive and too debilitating for long-term use for chronic pain such as in the case of Luther Greer. Defendants failed to warn Luther Greer of these limitations on the use of these drugs.

76.     Defendants' products were unreasonably dangerous at the time they left the control of Defendants because of inadequate warning.

77.     The opioid product manufactured and/or supplied by Defendants were defective in design in that an alternative design exists that would have prevented addiction

78.     A reasonably prudent manufacturer or seller would not have put Defendants' products on the market had it known of the products' dangerous condition and/or defective design.

79.     Therefore, Defendants are liable for the damages caused to Luther Greer by their opioid products' unreasonably dangerous and defective design and inadequate warnings of their opioids' addictive properties.

## DAMAGES

80.     Plaintiff reasserts the allegations in the foregoing paragraphs as if fully set out herein.

81.     As a direct and proximate result of the actions and omissions of Defendants, Decedent Mr. Greer suffered damages including, but not limited to, medical and funeral expenses, physical injuries, pain and suffering, mental anguish, loss of enjoyment of life, future lost wages and loss of life.

82.     Plaintiff, as a wrongful death beneficiary of Decedent Mr. Greer, is legally entitled under the Mississippi Wrongful Death Statute, Miss. Code Ann. § 11-7-13, to recover in this action

all damages for all wrongful death beneficiaries of Decedent Mr. Greer whose death was legally and proximately caused by the acts and omissions of Defendants.

83. As a result of the aforementioned acts and/or omissions, Defendants are liable for all elements of damages arising from the violation of Decedent Mr. Greer's rights and his wrongful death, including but not limited to the following:

a. Damages for the physical pain and suffering of Luther Greer prior to his death;

b. Damages for the mental anguish and horror suffered by Luther Greer prior to his death;

c. Damages for the losses of financial support and maintenance which Luther Greer would have provided to Plaintiff;

d. Damages for the loss of love, companionship, society, advice and care of Luther Greer, the Plaintiff suffered and will suffer in the future;

e. Damages for the funeral expenses resulting from the death of Luther Greer;

f. Damages for the value of the life of Luther Greer;

g. Damages for the severe psychological, physical and emotional distress suffered by Plaintiff arising from the death of Luther Greer;

h. Damages for all other losses, both economic and intrinsic, and tangible and intangible arising from the death of Luther Greer;

i. Past pain and suffering;

j. Past medical expenses;

k. Extreme mental anguish and emotional distress;

l. Punitive damages; and

m. Other damages to be shown during discovery and at trial.

18

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests the following relief: That process is issued in accordance with law to the Defendants and that Plaintiff be granted a jury trial and judgment from and against the Defendants as follows:

a) Reasonable compensatory damages from and against each Defendant, in their individual or official capacities, individually, jointly, severally and vicariously, as appropriate;

b) Punitive damages from and against each Defendant in their individual capacities in an amount reasonably calculated to punish each Defendant and to deter similar conduct by other healthcare providers, pharmacists, pharmacies and others similarly situated;

c) Pre-judgment interest on liquidated damages;

d) Post-judgment interest;

e) All costs associated with bringing this action and prosecution, including all costs of court, reasonable attorney fees and expenses; and

f) General Relief, to which Plaintiff may be entitled which has been specifically pled.

Respectfully submitted, this the 12th day of August, 2019.

JEFFERSON V. HESTER, MSB# 104904
KIMBERLY P. SIMOES, MSB# 10251
MICHAEL D. GREER, MSB# 5002
*Counsel for Plaintiff*

Greer, Russell & Dent, PLLC
117 N. Broadway
Tupelo, Mississippi 38802
(662) 842-5345 / Phone
(662) 842-6870 / Facsimile
jhester@greerlawfirm.com
mgreer@greerlawfirm.com

Simoes Law Group
117 N. Broadway
Tupelo, Mississippi 38802
(662) 842-5345
kimberly@simoeslaw.com

### <u>CERTIFICATE OF COMPLIANCE WITH MISS. CODE ANN. § 11-1-58</u>

I, Jefferson V. Hester, do hereby certify that I have reviewed the facts of this case and

have consulted with at least one (1) expert qualified pursuant to the Mississippi Rules of Civil

Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to

standard of care or negligence and who I reasonably believe is knowledgeable in the relevant

issues involved in this particular action, and that I have concluded on the basis of such review

and consultation that there is a reasonable basis for the commencement of this action.

This, the 12th day of August, 2019.

JEFFERSON V. HESTER

20

OCT 0 7 2019